**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DICK DAVIS

      PLAINTIFF,

*v.*

GARTNER, INC.

      DEFENDANT.

Civil Action No.

Jury trial demanded

## PLAINTIFF'S ORIGINAL
## COMPLAINT AND JURY DEMAND

Plaintiff, Dick Davis, by and through his undersigned counsel, files this Complaint for racial discrimination, retaliation and unlawful termination of employment in violation of 42 U.S.C. §2000e et. seq., 42 U.S.C. §1981 against Defendant, Gartner, Inc., and alleges as follows:

PARTIES

1.

Plaintiff Dick Davis is a citizen and resident of the United States currently residing in Paulding County, GA.

2.

1

Defendant Gartner, Inc. is based in Delaware and may be served with process by serving its registered agent, Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092.

JURISDICTION AND VENUE

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C.§ 1343(a)(4) as this action arises under the laws of the United States, specifically 42 U.S.C. §1981.

4.

This suit is authorized and instituted pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq., ("Title VII") and 42 U.S.C §1981 ("Section 1981").

5.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 30, 2023. Plaintiff received his Notice of Rights to Sue on August 6, 2025. Hence, Plaintiff has exhausted his administrative remedies and timely brings this action.

6.

Plaintiff's claims for retaliation under 42 U.S.C. §1981 are timely filed

within the four-year statute of limitations period set forth by 28 U.S.C. §1658.

7.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within this district.

FACTUAL BACKGROUND

8.

Plaintiff is an African American male.

9.

Plaintiff was hired by Defendant as an Executive Partner on January 4, 2022.

10.

Plaintiff's job involved supporting the sales team and transitioning new accounts to the service delivery team.

11.

Plaintiff reported to Managing Vice President Scott Archibald (Caucasian) until March 31, 2022.

12.

From April 1, 2022, to May 30, 2022, Plaintiff reported to Managing Vice President Marissa Mann ("Ms. Mann").

13.

From May 31, 2022, to January 2, 2023, Plaintiff reported to Vice President Brian Dilmore ("Mr. Dilmore") (Caucasian).

14.

After January 2, 2023, Plaintiff reported to Managing Vice President Randy McClausland (Caucasian).

15.

For the first six months of his employment, Plaintiff shadowed Nick Portaro ("Mr. Portaro") (Caucasian).

16.

Plaintiff was not issued a mid-year performance evaluation in 2022.

17.

Plaintiff was not allowed to attend a leadership meeting in Dallas, Texas.

18.

Mr. Portaro, who is Caucasian, was allowed to attend the Dallas meeting.

19.

On or about October 5, 2022, Plaintiff tested positive for COVID-19 and took sick leave.

20.

Shortly after, Mr. Dilmore told Plaintiff that Ms. Mann had complained about canceled meetings.

21.

On the same day, Team Leader Tom Beck informed Plaintiff that Ms. Mann said Plaintiff had a "branding issue."

22.

Despite improving performance, Plaintiff received an "Inconsistent" rating on his 2022 annual review.

23.

Plaintiff's performance improved from -13.2% growth in the first half of 2022 to -6.2% in the second half.

24.

On March 31, 2023, Defendant placed Plaintiff on a Performance Improvement Plan ("PIP").

25.

Despite improvement, Mr. Dilmore had already written in the 2022 annual review that Plaintiff's performance was "not recoverable."

26.

Mr. Dilmore later canceled regular meetings with Plaintiff in January

2023.

27.

On April 5, 2023, Plaintiff asked Mr. Dilmore for guidance on job performance expectations.

28.

Mr. Dilmore told Plaintiff to direct those questions to others.

29.

Plaintiff continued to show improvement through early 2023.

30.

Plaintiff's February 2023 year-over-year growth reached 54.9%.

31.

On June 2, 2023, Group Vice President Darin Brumby congratulated Plaintiff for a major sales achievement.

32.

Director Josh Polo admitted sales data and metrics were not completely accurate.

33.

Plaintiff's Caucasian colleague, Mr. Portaro, had worse performance metrics but was not placed on a PIP.

34.

The only other employee placed on a PIP was African American.

35.

Plaintiff engaged in protected activity by filing a charge with the EEOC on October 30, 2023.

36.

On February 9, 2024, Defendant terminated Plaintiff's employment.

<u>COUNT I</u>
<u>RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII</u>

37.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 36 of this Complaint as though fully set forth herein.

38.

At all times relevant, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

39.

At all times relevant, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

40.

Plaintiff is African American and belongs to a protected class under Title VII.

41.

Plaintiff was qualified for his position and met the legitimate expectations of his employer.

42.

During his employment, Plaintiff was subjected to disparate treatment because of his race.

43.

Plaintiff was denied a mid-year performance evaluation in 2022 while similarly situated Caucasian employees received one.

44.

Plaintiff was excluded from a leadership meeting in Dallas, Texas, while his Caucasian counterpart, Mr. Portaro, was permitted to attend.

45.

Plaintiff's 2022 annual performance review was rated "Inconsistent" despite measurable improvement in his performance metrics.

46.

Plaintiff was placed on a PIP in March 2023 despite demonstrating improvement and securing a major sales achievement.

47.

Defendant's management, including Mr. Dilmore, expressed that Plaintiff's performance was "not recoverable" even before the PIP was

issued.

48.

Plaintiff did not receive meaningful feedback or guidance on how to improve, unlike similarly situated Caucasian employees.

49.

Plaintiff's Caucasian peer, Mr. Portaro, had worse performance metrics but was not placed on a PIP.

50.

The only other employee placed on a PIP during the relevant time was also African American.

51.

Plaintiff's termination followed a pattern of unequal treatment based on race and occurred on February 9, 2024.

52.

Defendant treated Plaintiff less favorably than similarly situated non-African American employees under similar circumstances.

53.

Defendant's conduct constitutes unlawful discrimination based on race in violation of 42 U.S.C. § 2000e-2(a)(1).

54.

Defendant's actions were willful, wanton, and in reckless disregard of Plaintiff's rights under Title VII, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII,
### 42 U.S.C. § 2000e-3(a)

55.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 36 of this Complaint as though fully set forth herein.

56.

At all relevant times, Plaintiff was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

57.

At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

58.

On October 30, 2023, Plaintiff filed a charge of discrimination with the EEOC, alleging that Defendant had discriminated against him based on race.

59.

Filing a charge of discrimination with the EEOC is a protected activity under Title VII.

60.

Defendant was aware of Plaintiff's EEOC charge shortly after it was filed.

61.

After Plaintiff engaged in protected activity, Defendant subjected him to adverse treatment.

62.

On February 9, 2024, Defendant terminated Plaintiff's employment.

63.

The timing between Plaintiff's protected activity and his termination creates a causal connection.

64.

Defendant failed to provide Plaintiff with any meaningful feedback or improvement plan after he filed the EEOC charge.

65.

Defendant had already signaled its intent to terminate Plaintiff as early as December 2022, despite Plaintiff's improving performance.

66.

Defendant's conduct was intentional, willful, and in reckless disregard of Plaintiff's rights under Title VII.

## COUNT III
## RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981

67.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 36 of this Complaint as though fully set forth herein.

68.

At all times relevant, Plaintiff had a contractual relationship with Defendant within the meaning of § 1981.

69.

Plaintiff is African American and belongs to a racial group protected under § 1981.

70.

Plaintiff performed the duties of his job in a satisfactory and professional manner.

71.

Defendant intentionally discriminated against Plaintiff on the basis of his race.

72.

Plaintiff was denied job opportunities and benefits available to his white counterparts.

73.

Plaintiff was denied a mid-year performance review that white colleague Mr. Portaro received.

74.

Plaintiff was denied attendance at an important leadership meeting in Dallas, Texas, while Mr. Portaro was allowed to attend.

75.

Plaintiff was issued an "Inconsistent" annual performance review despite showing year-over-year improvement.

76.

Plaintiff was placed on a PIP while white employees with equal or worse performance were not.

77.

The only other employee placed on a PIP was also African American.

78.

Defendant's Vice President Mr. Dilmore stated that Plaintiff's performance was "not recoverable," even before Plaintiff was given a chance to improve.

79.

Mr. Dilmore then canceled bi-weekly meetings with Plaintiff and refused to provide performance guidance.

80.

On February 9, 2024, Defendant terminated Plaintiff's employment.

81.

Defendant did not terminate white employees with similar or worse performance.

82.

Defendant interfered with and ultimately terminated Plaintiff's contractual relationship in violation of 42 U.S.C. § 1981.

<u>COUNT IV</u>
<u>RETALIATION IN VIOLATION OF SECTION 1981</u>

83.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 36 of this Complaint as though fully set forth herein.

84.

Plaintiff engaged in protected activity when he complained about race-based unequal treatment in the workplace.

85.

Plaintiff also engaged in protected activity when he filed a charge of discrimination with the EEOC.

86.

At all relevant times, Defendant was aware that Plaintiff had engaged

in protected activity.

87.

After Plaintiff engaged in protected activity, Defendant took adverse actions against him.

88.

Defendant placed Plaintiff on a PIP after he raised concerns about unequal treatment.

89.

Plaintiff was denied meaningful feedback and performance support from Mr. Dilmore.

90.

Mr. Dilmore canceled regularly scheduled one-on-one meetings with Plaintiff after Plaintiff's complaints.

91.

Defendant continued to treat Plaintiff less favorably than similarly situated white employees.

92.

On February 9, 2024, Defendant terminated Plaintiff's employment.

93.

The timing and sequence of events support a causal connection

between Plaintiff's protected activity and the adverse actions taken against him.

94.

Defendant intentionally retaliated against Plaintiff for engaging in protected activity under 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a trial by jury on all issues trial by a jury and respectfully requests the following relief:

1. Compensatory damages for lost wages, economic benefits of employment to Plaintiff in the amount to be determined by the trier of fact;

2. Compensation for emotional distress and humiliation;

3. Punitive damages to punish Defendant for its discriminatory actions;

4. Cost of litigation in this action and his reasonable attorney's fees;

5. Any other relief the Court deems just and proper.

    Respectfully submitted this 1st day of November 2025.

**JESSE KELLY PC**
By:    /s/ Jesse L. Kelly
Jesse L. Kelly, Esq.
Georgia Bar No. 935869
355 Lenox Road Suite 1000
jesse@jkellypc.com

16

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 5.1, the undersigned, attaches this Certificate of Service

This 1st day of November 2025.

**JESSE KELLY PC**

*/s/ Jesse Kelly*
**Jesse L. Kelly**
Ga Bar No. 935869
3355 Lenox Rd. Suite 1000,
Atlanta, GA 30326
Phone: (678) 460-6801
Fax: (678) 730-3443
jesse@jkellypc.com